UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN L. SOSA

     Applicant,

v.                            CASE NO. 8:10-cv-2913-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.
_____/

## O R D E R

     Kevin L. Sosa applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for armed burglary of a dwelling.  Sosa alleges two grounds of trial court error and two grounds of ineffective assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc.  18)

## FACTS[1]

     Sosa and the victim had a dispute over a debt.  Sosa, armed with a gun, and co-defendant Steven Velez (both acquaintances of the victim) kicked down the front door of the victim's apartment and entered the apartment without permission.  The victim barricaded himself in the bathroom.  Velez "beat on the [bathroom] door" with a stick to try to get the door to open.  Although he could not see Sosa or Velez,

---

[1]  This factual summary derives from Sosa's brief on direct appeal and testimony adduced at trial. (Respondent's Exhibits 1 and 2)

the victim heard and recognized their voices.  The victim heard Velez tell Sosa to

"kill [the victim]."  Unable to get into the bathroom, Sosa and Velez fled the

apartment.  The victim left the bathroom and saw Sosa running away from the

apartment.  Sosa and Velez were arrested and charged with armed burglary.  Velez

pleaded guilty and testified against Sosa.  A jury convicted Sosa of armed burglary

and he serves twenty-five years imprisonment.

## I.   EXHAUSTION AND PROCEDURAL BAR

**Grounds One and Four**

In ground one Sosa contends that the trial judge erred by not instructing the

jury on the elements of the "intended" crime.[2]  In ground four Sosa contends that the

trial judge erred by giving a "combined instruction" that did not differentiate entering

with permission from entering without permission.  Sosa claims that both errors

violated his federal right to due process.  The respondent argues that both ground one

and ground four are unexhausted and procedurally barred.  Sosa in his reply

---

[2] The trial judge instructed the jury on burglary (Respondent's Exhibit 1, Vol. III, p. 304):

> Before you can find Mr. Sosa guilty of burglary of a dwelling, the
> State, must prove these elements beyond a reasonable doubt:
>
> First, that he entered or remained in a dwelling owned by, or in the
> possession of, [the victim].
>
> Second, that Mr. Sosa did not have the permission or consent of [the
> victim], or anyone else authorized to give permission, to enter or
> remain in the dwelling at that time; and
>
> Third, that at the time of the entering or remaining in the dwelling,
> Mr. Sosa had a fully-formed, conscious intent to commit an offense
> in that dwelling.

(Doc. 21) denies that a procedural bar precludes federal review of the merits of both grounds.

First, to the extent Sosa argues that the trial judge erred under state law or state procedural rules, he cannot obtain relief.  Subject matter jurisdiction does not lie to address either ground one or ground four because neither ground presents a federal constitutional question.  28 U.S.C. § 2254(a).  *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."), and *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The limitation on federal habeas review to a ground alleging a federal constitutional error applies with equal force when the ground, which actually involves a state law issue, is couched in terms of a Fourteenth Amendment due process violation.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).[3] Consequently, neither ground one nor ground four warrants relief.

Notwithstanding cognizability, a procedural bar precludes a merits review of each ground.  Although he raised both grounds in his brief on direct appeal, Sosa argued a violation of only state law — not federal law — and cited only state cases. The failure to present a federal due process claim to the state court renders the claim

---

[3]   Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

unexhausted.  Under 28 U.S.C. § 2254(b)(1)(A) and (b)(1)(C), before a federal court may grant relief, a federal habeas applicant must exhaust, either on direct appeal or in a state post-conviction motion, every available state court remedy for challenging his conviction.  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas [application]."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  To exhaust a claim, an applicant must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus applicant exhaust available state court remedies as a prerequisite to federal review is satisfied if the applicant "fairly presents" his claim in each appropriate state court and alerts that court to the federal

nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  An applicant may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  An applicant must "do more than scatter some makeshift needles in the haystack of the state court record."  *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (quotations and citations omitted).

Sosa's failure to present to the state court the federal due process claims alleged in grounds one and four deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Boerckel*, 526 U.S. at 845.  *See also Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.").  Consequently, the exhaustion requirement remains unsatisfied, *Henry*, 513 U.S. at 365, and renders grounds one and four procedurally defaulted.

Under the procedural default doctrine, "[i]f the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, an applicant

"must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, an applicant must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Without a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  A fundamental miscarriage of justice occurs in an extraordinary case if a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.  This exception requires an applicant's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, an applicant must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Sosa fails to demonstrate cause and prejudice excusing the default of his federal due process claims. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495–96. He neither alleges nor shows that the fundamental miscarriage of justice exception

applies.  *Henderson*, 353 F.3d at 892.  Because Sosa fails to proffer specific facts

showing an exception to procedural default, grounds one and four are procedurally

barred from federal review.

II.   **MERITS**

Sosa's remaining two grounds are exhausted and entitled to review on the

merits.

**Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Sosa's Rule 3.850 motion to vacate. (Respondent's Exhibit 11) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Sosa bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Sosa's post-conviction claims warrants deference in this case.

## Standard for Ineffective Assistance of Counsel

Sosa claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas [applicant]s can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."  466

U.S. at 690.

Sosa must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  466 U.S. at 691–92.  To meet this burden, Sosa must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on

investigation."  466 U.S. at 690–91.  Sosa cannot meet his burden merely by showing

that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would
> have done. Nor is the test even what most good lawyers would
> have done. We ask only whether some reasonable lawyer at the
> trial could have acted, in the circumstances, as defense counsel
> acted at trial . . . . We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751

(1983) (counsel has no duty to raise a frivolous claim).

Sosa must prove that the state court's decision was "(1) . . . contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) . . . based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective

assistance of counsel is very difficult because "[t]he standards created by *Strickland*

and § 2254(d) are both 'highly deferential,' and when the two apply in tandem,

review is 'doubly' so."  *Richter*, 526 U.S. at 105.  *See also Pinholster*, 131 S. Ct. at 1410

(An applicant must overcome this "'doubly deferential' standard of *Strickland* and the

AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)

("Double deference is doubly difficult for a[n] [applicant] to overcome, and it will be

a rare case in which an ineffective assistance of counsel claim that was denied on the

merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Two**

During his investigation Detective Russell Hassell developed Sosa as a suspect.

Detective Hassell contacted Sosa and asked him to come to the sheriff's office for

questioning.  Sosa, who was then seventeen years old, went to the sheriff's office

accompanied by his father.  Sosa claims that he asked Detective Hassell to allow

Sosa's father to be present during questioning.  Sosa further claims that his father also

asked Detective Hassell to accompany his son in the interview.  Detective Hassell

denied both requests.  Sosa alleges that he became nervous when Detective Hassell

"kept yelling and screaming" at him and that he "gave his statements after being

intimidated by Detective Hassell's emotional outburst."  (Doc. 1, p. 7)  Sosa contends

that his trial counsel rendered ineffective assistance by not moving to suppress Sosa's

statements[4] on the ground that Sosa's "legal right to have his father present at

---

[4] Detective Hassell testified on direct examination at trial to Sosa's conflicting statements in the interview (Respondent's Exhibit 1, Vol. II, pp. 197–98):

Q:    And upon reading his Miranda warnings to him, did he agree to make a statement to you?

A:    Yes, sir, he did.

Q:    Now initially, right off the bat, did Mr. Sosa ever tell you that he was even at the particular location?

A:    He denied even being near the apartment complex.

Q:    Upon hearing that, did you confront him with certain witness accounts or certain evidence in the case to tell him that that was not the case?

A:    Yes, sir.

Q:    And upon confronting him with this evidence and this testimony, did he change his story?

A:    Yes, sir.

Q:    What was the next version he gave you?

A:    The next one was that he was in the area and he had heard rumors that he was supposed to be involved with some sort of shooting that had occurred there.

Q:    Did you go on and ask him whether or not he knew who the shooter was?

(continued...)

questioning was violated by Detective Hassell's denials of both the requests

of . . . [Sosa] and his father." (Doc. 1, p. 8)

The state post-conviction court conducted an evidentiary hearing on this

ground. Trial counsel testified that Sosa never told him either that he wanted his

father present during the interview or that the police kept his father out of the

interview. (Respondent's Exhibit 11, Vol. III, pp. 14–15) Sosa testified at the

evidentiary hearing that he did not know that he had the right to have his father

present during the interview and that he twice told the police during the interview

that he wanted his father with him. (Respondent's Exhibit 11, Vol. III, p. 48) Sosa

acknowledged at the evidentiary hearing that he never discussed with trial counsel

that he wanted his father present during the interview.

The state post-conviction court rejected Sosa's ground of ineffective assistance

of counsel after the evidentiary hearing:

> Defendant claims that counsel failed to move to suppress
> Defendant's statements made to the arresting officer. Defendant
> alleges that he was denied the right to have his father present
> and that the police coerced him into giving his statement.
>
> Defendant testified during the evidentiary hearing that he twice
> requested to have his father present during the police interview

---

[4](...continued)
      A:     Yes, sir.

      Q:     What was his first response? Did he tell you he knew who the shooter was?

      A:     No.

      Q:     Does he later change that story and identify who the shooter is?

      A:     Yes, sir. He stated he had seen a black male with a gun.

and that he never discussed this with counsel nor did counsel question him about it. Trial counsel testified that while he did not have an independent recollection of discussing the police interview with Defendant, he is sure that he did. Counsel stated:

> Q:    And you never filed a motion to suppress the statements?
>
> A:    No, sir.
>
> Q:    Did Mr. Sosa ever tell you that he wanted his father to be present in the interview room but the detectives kept him out?
>
> A:    No.
>
> Q:    Would you agree that that would be an important fact if he knew about it regarding a motion to suppress for a juvenile?
>
> A:    Yes, sir. Sure.
>
> [. . . .]
>
> Q:    Is there any indiction from your file and your review of the testimony that there was any ground to successfully suppress his statements?
>
> A:    No, I didn't see anything meritorious at all.
>
> Q:    Okay. In fact, from those notes of your initial interview with the defendant in December 1999, was there ever an indication from the defendant that he was coerced or kowtowed or threatened or in any other way impermissibly made to make a statement or coerced to make a statement?
>
> A:    No, sir.

Upon review of the record and hearing testimony, the court finds that counsel was not ineffective for failing to file a motion

> to suppress. Trial counsel's testimony indicates that counsel was
> not made aware that Defendant wanted his father present
> during the police interview and that he saw no grounds or
> indicia of coercion on [the] part of the police in which to
> support the filing of a motion to suppress. Therefore Defendant
> is unable to demonstrate, pursuant to *Strickland*, that counsel
> was ineffective for failing to file a motion to suppress and that
> Defendant suffered prejudice as a result. As such, Defendant is
> not entitled to relief and [this] ground is denied.

(Respondent's Exhibit 10, pp. 6–7) (court's record citations omitted)

Contrary to Sosa's contention, neither his age nor the absence of his father in

the interview room during police questioning automatically renders involuntary

Sosa's statements to the police.[5]  *See Hall v. Thomas*, 611 F.3d 1259, 1289 (11th Cir.

2010) ("Regardless of what [Florida] law requires, there is no clearly established

*federal constitutional requirement*: (1) that police officers advise juveniles, suspected of

state crimes, of a right to have a parent present during questioning, or (2) that

interrogation cease upon a juvenile's request for the presence of a parent or

guardian.") (footnote omitted) (emphasis in original).  Even assuming that an

examination of the totality of the circumstances of the police interview results in the

conclusion that Sosa's statements were involuntary, *see Fare v. Michael C.*, 442 U.S.

707, 725 (1979),[6] and further assuming that trial counsel performed deficiently by not

---

[5]  Detective Hassell testified at trial (Respondent's Exhibit 1, Vol. II, p. 197) that he read the *Miranda* warning to Sosa, that Sosa appeared to understand his rights, and that Sosa agreed to give a statement. Sosa in the federal application neither denies that he received the *Miranda* warning nor challenges the validity of the waiver.

[6]  *Fare* explains that the "totality of the circumstances approach" includes evaluation of the juvenile's age, experience, education, background, and intelligence, and allows a court to consider "special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved." 442 U.S. at 725.

moving to suppress Sosa's statements, Sosa cannot establish his ground of ineffective assistance of counsel because he shows no resulting prejudice.

Sosa's co-defendant testified at trial that he accompanied Sosa to the victim's apartment.  Sosa, armed with a gun, kicked in the front door and entered the victim's apartment without permission.  (Respondent's Exhibit 1, Vol. II, pp. 139–43)  The victim, who knew Sosa, testified at trial that he barricaded himself in the bathroom of the apartment when he heard the perpetrators kick down the front door.  (Respondent's Exhibit 1, Vol. II, pp. 116–17)  The victim heard the perpetrators talking as they tried to kick in the bathroom door, and he recognized Sosa's voice.  (Respondent's Exhibit 1, Vol. II, pp. 117–19)  Once he heard the perpetrators trying to flee the apartment, the victim left the bathroom and saw Sosa running away.   (Respondent's Exhibit 1, Vol. II, pp. 119–20)  Another eyewitness, the victim's next-door neighbor who had seen Sosa at the victim's residence on previous occasions, testified that he saw Sosa flee from the victim's apartment with a gun in his hand.  (Respondent's Exhibit 1, Vol. II, pp. 173–77)

In light of the testimony adduced at trial, even if trial counsel performed deficiently by not moving to suppress Sosa's conflicting statements from the police interview, Sosa presents no evidence establishing a reasonable probability exists of a different outcome at trial if his statements were suppressed.  *See e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been

ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'").  Sosa fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (2).

**Ground Three**

On the day the trial began counsel recognized a potential discovery problem and explained to the trial judge (Respondent's Exhibit 1, Vol. II, pp, 94–95):

> Now, . . . the *Richardson* matter we might have to face, and I'm asking to face it now because I'm willing to stipulate to a mistrial if the State feels as though it's been prejudiced in this. We took the deposition of a State witness, Robin Hefty, in October. Ms. Hefty gave an account completely at variance with the account of the other witnesses. Basically she testified that the man she believes to be Sosa ran into the apartment next door after the shooting. So identity is an issue in the case. It's the issue in the case and the significance of her testimony is very simply that Kevin Sosa didn't do it; somebody else did it. So the police never showed her a photopa[c]k.
>
> It occurred to me belatedly . . . what would be the worst possible thing that could happen to me if I called Robin Hefty for this testimony? The answer would be very simply the man I see sitting over there is the man I saw the night of [the crime]. The police didn't do a photopa[c]k, didn't do one after October, as far as I know. I had the investigator . . . yesterday put a photopa[c]k together. She picked out a different man as possibly being Kevin Sosa.
>
> The purpose I'm going to use it for is primarily prophylactic; is she comes in and I say, do you see the man you saw on [the night of the crime] and she says, no, then I don't have a problem. If she comes in and says, yes, he's sitting over there, then I intend to impeach her with this five-picture photopa[c]k of Hispanic males.

The prosecutor advised the judge that he would not argue a *Richardson*[7] violation and the trial began.

After the trial judge denied counsel's motion for a judgment of acquittal at the close of the state's case and before the defense presented its case, counsel again explained (Respondent's Exhibit 1, Vol. II, pp. 210–14):

> [Counsel]: The other matter I need to take up is, as I explained to the court this morning, Ms. Hefty has never been shown a photopa[c]k until yesterday. I had her in right after we broke for lunch. She had an opportunity to see Mr. Sosa in the courtroom and she said, yes, that's one of the three men I saw outside of the apartment on [the night of the crime].
>
> So I showed her the photopa[c]k and I asked her, did you see this yesterday and did my investigator ask you yesterday whether you recognized any of the guys depicted in this [five] picture photopa[c]k and she admitted no, but she said seeing him in person refreshed her recollection. So where we are now is I would — I'm going to change the nature of this and ask at some point that Mr. Sosa's photopa[c]k be admitted into evidence for the purpose of displaying to the jury the idea here being it's very clear in this picture that this is a picture of Mr. Sosa whom she couldn't identify in a photopa[c]k but she says she now can identify in court.
>
> [. . . .]
>
> Court: What other reason are you calling her?
>
> [Counsel]: To lay out what she saw.

---

[7] *See Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971).

Court:        The three people?

[Counsel]:     Yeah, she says she saw three people. She saw three people. They went up to the door. She saw one of them kick the door open. She heard one shot fired. They all fled. According to her, Mr. Sosa ran by her. . . . [T]he reason I really called her is the guy she thought was Sosa ran into an adjacent apartment. This is what brought her down here to begin with. Now it turns out that her — who she thought was Sosa is not Sosa. So, I mean I — under the circumstances, obviously, I'm chagrined that I called her at all but she has something to add. That's all I can do.

Hefty was the defense's first witness.  Hefty testified that on the night of the crime she was outside her apartment walking her dog.  (Respondent's Exhibit 1, Vol. II, pp. 215–16)  She saw three men walk past her.  Moments later she heard an apartment door "crash open" and saw "three guys standing there with the guy in the middle's foot . . . forward."  Hefty next heard a gunshot.  The three men fled.  Hefty testified that one of the men ran into the apartment next-door to the victim's apartment and the other two men ran past her.  (Respondent's Exhibit 1, Vol. II, p. 221)  Hefty identified Sosa in court both as one of the three men who walked past her on the way to the victim's apartment on the night of the crime and as the man who fled into the next-door apartment.  (Respondent's Exhibit 1, Vol. II, pp. 220–21)

Counsel further inquired of Hefty about the photopack (Respondent's Exhibit 1, Vol. II, pp. 291–20):

Q:      Now, do you recall yesterday being interviewed by a private detective . . . ?

A:      Yes.

Q:      And did [the detective] show you six photographs?

A:      Yes.

Q:      And the photographs I'm going to lay out in front of you
        all depict young Hispanic males; do you agree? Were
        you asked by [the detective] whether you recognized
        Kevin Sosa out of those photographs?

A:      Yes, he asked me that question after I told him, well,
        some of them look familiar but not all of them.

Q:      And which — just point to the photograph. Don't show
        it to the jury. Which photograph did you pick out as
        being Kevin Sosa? I will take this one and put this one
        here.

        . . . .

Q:      Let me show you what's been marked for identification
        as Defendant's Exhibit 1. Do you recognize that picture?

A:      Yes.

Q:      Do you have your initials on it?

A:      Yes.

Q:      Now, the other picture you picked out, what have you
        written on the bottom?

A:      Possibly Mr. Sosa.

Q:      [The detective] asked you whether you recognized any
        of the others. You didn't tell him that Defense Exhibit 1
        was one of them that you saw that night?

A:      No, I didn't tell him that.

Sosa testified on his own behalf.  He averred that he was at the apartment

complex on the night of the crime where he "heard gunshots and . . . s[aw] a black

man running into a house." (Respondent's Exhibit 1, Vol. II, p. 248)  Sosa denied having a gun on the night of the crime and denied entering the victim's apartment.

Sosa contends in the federal application that his trial counsel rendered ineffective assistance by calling Hefty as a defense witness because her testimony was "wholly inconsistent" with both the theory of defense and Sosa's testimony.  Sosa further alleges that Hefty's "inculpatory testimony . . . far outweighed and [was more] prejudicial than [any] exculpatory evidence/testimony that she could provide." (Doc. 1, p. 9)

The state post-conviction court rejected this ground of ineffective assistance of counsel in Sosa's Rule 3.850 motion:

> [T]he Defendant alleges that counsel was ineffective for calling Ms. Hefty as a witness. More specifically, the Defendant claims that her testimony led to inconsistent statements with the Defendant's testimony. [Trial counsel] explained the purpose and strategy of calling Ms. Hefty in a motion at the close of the State's case.
>
> [. . . .]
>
> "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. 689, 104 S. Ct. at 2065 (citations omitted). Accordingly, "tactical or strategic decisions of counsel do not justify post-conviction relief." *Gonzalez v. State*, 579 So. 2d 145 (Fla. 3d DCA 1991). Furthermore, "even where the tactical decision evinces bad judgment, relief is not justified." *Id*. Therefore, the Defendant is not entitled to relief for the strategical decision of trial counsel to have Ms. Hefty testify . . . .

(Respondent's Exhibit 9, pp. 3–4) (court's record citations omitted)

"The inquiry into whether a lawyer has provided effective assistance is an objective one:  a[n] [applicant] must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002).  Trial counsel must decide which strategic and tactical option to pursue.  Sosa cannot meet his burden of satisfying *Strickland's* requirements merely by showing that the avenue chosen by counsel proved unsuccessful.  *See e.g., Minton v. Sec'y, Dep't of Corr.*, 271 Fed. App'x 916, 918 (11th Cir. 2008)[8] ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)), and *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  A habeas applicant must overcome a presumption that counsel's challenged conduct was a matter of strategy.  *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("[W]hich

---

[8]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. Rule 36-2.

witnesses, if any, to call, and when to call them, is the epitome of a strategic decision."); *Chandler*, 218 F.3d at 1314 (finding that counsel is not incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy").

Sosa fails to overcome the presumption that trial counsel's decision to call Hefty as a witness was anything other than trial strategy. *Strickland*, 466 U.S. at 689; *Perry*, 908 F.2d at 59. Sosa has not established that the outcome of the trial would have been different if counsel had foregone calling Hefty. Absent a showing of prejudice, Sosa's ground warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. Sosa fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting ground three. 28 U.S.C. § 2254(d)(1), (2).

Accordingly, Sosa's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Sosa and close this action.

**DENIAL OF BOTH A
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Sosa is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right." To merit a COA, Sosa must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Sosa is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Sosa must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 16, 2015.

_____

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE